ELLEN E. McMAHON, Appellee, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

TELEGRAPHS AND TELEPHONES: Liability as to Messages—
1 Inclusion of Unjust Claim. That an unjust claim is included with a just demand, in a claim made against a telegraph company, in a notice given under Sec. 2164, Code, 1897, will not bar recovery, as the inclusion of the unjust claim therein in no manner interferes with the object of the notice.

TELEGRAPHS AND TELEPHONES: Liability as to Messages—
2 Contracts to Transmit Money. Evidence reviewed, and *held* that the plaintiff was not entitled to recover, either for damages or for the cost of the service, against a telegraph company for a breach of its contract to transmit, before the close of the banking day, to a bank in another city, money to pay off a mortgage that was due to be paid at said bank on that day.

EVANS, J., specially concurs.
LADD, C. J., and PRESTON, J., dissent.

*Appeal from Webster District Court.—*R. M. WRIGHT, Judge.

APRIL 12, 1919.

REHEARING DENIED JULY 2, 1919.

PLAINTIFF claims defendant is liable to her for fail-

ing to deliver, by a stated time, money transmitted by it for her by telegraph. She has verdict and judgment, and defendant appeals.—*Reversed and remanded.*

*Albert T. Benedict, Miller & Wallingford,* and *Healy & Faville,* for appellant.

*Healy & Thomas,* for appellee.

Salinger, J.—I. Section 2164 of the Code makes it a condition precedent to recovery against a telegraph company that it be served with a written notice of claim within the time fixed in the statute. Timely notice was given, but therein claims were made for items which appellee confesses she could not recover for. Upon this, defendant argues that the inclusion of such items in said notice vitiates the notice, and, therefore, plaintiff is barred from recovering anything. The argument is based upon Section 2055 of the Code and cases decided thereunder. The last-named statute provision and the decisions under it work a statute penalty by imposing double damages upon a carrier if it does not make settlement within 30 days after the notice is served upon it. We do not think these are applicable. They impose a penalty for captiously refusing to make settlement after the carrier is advised there is something to settle; and the reasoning is that, since there is no obligation to pay a fictitious and unjust claim, that, where the demand for settlement is not separated, and includes what is not due with what is, the carrier should not be penalized for refusing to pay an unjust claim and taking the whole matter into court to determine what is and what is not unjust. On the other hand, the notice required by Section 2164 is analogous to the notice which must be given to municipal corporations of an injury claimed to have been received

1. Telegraphs
and Telephones : liability as to messages : inclusion of unjust claims.

on its streets. Section 2164 merely recognizes that a great telegraph company operates through a multitude of agents, engaged in very many places, and, therefore, provides that it shall not be held liable unless it be given such notice as will enable it to ascertain what evidence there is for or against a claim made while the matter is still sufficiently fresh to make it possible to obtain the evidence readily and effectively. That a notice which does give such opportunity makes untenable demands for items of damage will not bar recovery. The inclusion of such demands in no manner interferes with the sole object of the notice,—with the privilege the statute intended the company should obtain by means of the notice.

II. The method of presentation requires no extended consideration. It suffices to say that complaints of instructions are properly presented, and that consideration of these complaints makes it necessary to decide, in effect, whether, upon the record as it now exists, the appellee has any right to recover. Had appellee succeeded in paying a sum of money to the First National Bank at Audubon by four o'clock of the afternoon of March 1, 1917, she would have been entitled to the cancellation of a mortgage given by her, and such cancellation would have saved her money, by enabling her to exchange said mortgage for one bearing a lower rate of interest. There is a dispute on whether plaintiff claims that she lost this saving and sustained other loss because of the negligence of the defendant, or because defendant breached a contract with her to deliver the money to the bank at Audubon by said time. For reasons to be stated, we think it immaterial whether she relies upon negligence or upon breach of contract.

2. TELEGRAPHS AND TELEPHONES: liability as to messages: contracts to transmit money.

The parties acted at Fort Dodge. At 3:45 in the after-

noon of March 1st, they completed an arrangement under which defendant immediately afterwards attempted to wire the First National Bank at Audubon a sum of money. Assume, for the sake of stating the basis of our conclusion, that defendant contracted to deliver the money on that day, and broke such contract. Why was it not error to permit plaintiff to recover more than the sum defendant charged for its services? What loss beyond that did defendant inflict on plaintiff by the alleged breach of the contract? If contract there was, it was one that the money should be transmitted from Fort Dodge to Audubon, and to the bank at Audubon, within 15 minutes from the time the transmission was agreed upon. Appellee practically concedes it was impossible to perform the contract; for she argues that, at any rate, if the period of time was insufficient, that fact was better known to the agent of the defendant than it was to plaintiff, and defendant should not have undertaken to do an impossible thing, and that, if it did undertake to do something which it was impossible to do, it cannot be excused on that ground "from paying the damages resulting from its failure to perform its agreement." Grant that. But the naked fact that an agreement was broken, or an impossible thing undertaken, gives no right to damages due to the breach of contract. Aside from the charge exacted for transmission, the alleged breach left the plaintiff precisely where she was before she made the contract. As said, the argument for appellee, in effect, concedes it was impossible to transmit the money to Audubon within what at 3:45 was left of the banking day. So, at the very time when plaintiff contracted with the defendant, it was already impossible to get the money to Audubon in time to make her the saving for the loss of which she claims damages. If plaintiff was in no worse position after the contract was breached that she was before she made her contract, then neither the making of the contract

nor its breach was the proximate cause of any loss suffered by her. Her loss was an accomplished fact before she had a contract with defendant. No act or omission on part of defendant makes it responsible for a loss that plaintiff must have suffered, no matter what defendant did or failed to do. The point lends itself to illustration readily. Suppose one in Des Moines on March 1st can obtain a substantial benefit by being personally present in Chicago at seven in the evening of that day. At five o'clock in the afternoon, he engages a special train to take him to Chicago. It is impossible for such train to get him to Chicago by seven. The carrier agrees to transport him from Des Moines to Chicago in two hours, and, of course, it knows that performance is impossible. Could anything be recovered of the carrier beyond the charge for the transportation? Clearly not. To make the profit, it was necessary to be in Chicago by seven. Before the train was engaged, it was already impossible to reach Chicago by seven. The loss of the profit was sustained before the contract with the carrier was made. Hence, all that was lost by what the carrier did or omitted to do was the charge made for the special train. It seems to us the illustration fully covers the case at bar at this point. And we hold that, assuming the contract claimed was made and broken, the only item of damage that it was proper to submit was the cost of the services of defendant.

III. We now come to the question whether, if it be assumed defendant broke the contract and was negligent, there was any warrant for submitting even as much as the cost of the services. If the defendant succeeded in transmitting the money to the bank in time, then, though it broke a contract or was negligent, there can, of course, be no recovery from it. If the bank received the money in time, and refused to cancel the mortgage, the remedy was

against it, and not the defendant. What is the state of the record on this question? The message left Fort Dodge at 3:45 in the afternoon. By 3:53, it got to Atlantic. There, the defendant arranged with a bank in Atlantic to reach the Audubon bank with a message. That message reached Audubon, and perhaps the bank, by 4:33. The telegram was signed by an Atlantic bank, and was in the following words:

"We today mail you draft $51,940 drawn by local office Western Union Telegraph Company on Corn Exchange National Bank, Chicago, Illinois, order ours and yours indorsed by us. Transfer account Fort Dodge Farm Loan & Trust Company."

In one instruction, the court charged plaintiff might recover if she had established that the draft was not presented to the Audubon bank until March 2d, and the bank refused to receive the same "because the same was not presented during banking hours on March 1, 1917." There would have to be a reversal for the mere giving of this instruction, because there is no evidence to sustain its giving. But the giving of the instruction raises as well the substantial question whether defendant did fail to transmit the money to the Audubon bank in time. The president of that bank testifies he was present at the bank both on March 1st and March 2d. He was then asked:

"Q. On either of those days, did you receive any moneys purporting to come through the Western Union Telegraph Company from Ellen McMahon? A. Yes, sir. Q. On what day? A. On the afternoon of March 1st, we received a wire from Atlantic, from the Atlantic National Bank, wiring us the amount."

Appellee contends that this testimony is modified to her advantage because of the following further testimony on part of the bank president:

"Q. When did you receive any check, draft or money? A. When the check came on the afternoon of the second of March, 1917."

The two statements are entirely consistent, and both sustain the position of the appellant. The effect of the testimony is that, on the afternoon of March 1st, but after the closing of the bank for the day, the bank received moneys purporting to come through the telegraph company from Ellen McMahon, by means of receiving a wire from the Atlantic National Bank, "wiring us the amount;" but that actual draft or check was not received until March 2d, and was thereafter returned. Why does not this conclusively show that nothing is due the plaintiff, because the defendant effected all that it had undertaken to do? Concede the officers of the bank could have declined to treat the telegram from the Atlantic bank as being a sum wired by the company for Ellen McMahon; could have refused to treat the message as being money at all; might have refused money itself, because the banking day was over. The trouble is that neither these nor any other objections were made. What we, in effect, have, is the ordinary case of a tender which might be insufficient in form if objected to, but to which no objection is made. To sum it all up: If it be assumed that defendant broke a contract and was negligent, neither caused plaintiff any injury, because, despite alleged breach of the contract or alleged negligence, defendant succeeded in doing what entitled plaintiff to make her saving through having her mortgage canceled. In other words, defendant succeeded in doing all it was bound to do, on any theory. How does the case differ from what it would be if it were this: Suppose defendant sent a messenger to Audubon with the actual money; he delivers it to the bank in time to entitle plaintiff to cancellation; the bank receives the money without objection, and then re-

fuses to cancel, and returns the money to plaintiff. In the supposed case, it would not matter that, if the messenger had not been negligent, he would have reached Audubon earlier, nor that what the bank took from him without objection was not legal tender. The only remedy of the plaintiff would be against the bank.

We reverse because the instructions submitted items of damages claimed for which plaintiff had no right to recover. Under the presentation made, we must make the instructions the cause of reversal. But the reasons stated for the reversal should have full consideration on retrial.

This disposition makes it unnecessary for us at this time to pass upon other claims made by the appellant, including a claim that appellee has failed to minimize her damages as she should have done.—*Reversed and remanded.*

GAYNOR and STEVENS, JJ., concur.

EVANS, J., specially concurs.

EVANS, J. (specially concurring). I deem the question presented in Division III of the opinion a close one. I prefer to put my concurrence in the result upon the ground that reasonable diligence to perform the service undertaken by defendant was the full measure of its duty. This record discloses no failure of the defendant in that regard. The emphasis of plaintiff's contention is that she had a special contract whereby defendant undertook absolutely to deliver the money at Audubon by 4 o'clock of that day; and that its failure constituted a breach of the contract, regardless of the question of diligence. This is an erroneous theory, and permeates the entire record. The defendant corporation had no facilities, except by wiring, whereby it could deliver plaintiff's funds at Audubon on the same day. Its nearest paying office was Atlantic. It had none at Audubon. So far as appears, it used every regular facility which it had in attempted performance. It is suggested

that it could have delivered the funds by automobile; and that, therefore, it was bound to do so, in performance of its contract. But the defendant, as a public service corporation, was not at liberty to contract with a patron for special facilities which were not equally and usually available to all patrons alike. Nor was the agent of such corporation authorized to contract specially for a service which was beyond its regular working facilities. The duties of such corporation are quasi public. The measure of its duty is reasonable diligence and equality of privilege, as a matter of law, and it can contract for neither less nor more.

Though this point is not directly made by appellant, yet the record is such that we cannot sustain the judgment for plaintiff without committing ourselves to the false premise upon which the case rests.

LADD, C. J. (dissenting). I dissent from the second and third paragraphs of the opinion. As the second paragraph necessarily follows from the conclusion reached in the third, only the latter need be given attention. The message left Fort Dodge at 3:45 o'clock in the afternoon, and reached Atlantic 8 minutes later, when the defendant arranged with the bank at that place to reach the Audubon bank with a message, and this was accomplished by 4:33 o'clock on the same day. The telegram was signed by the Atlantic bank, and in words following:

"We today mail you draft $51,940 drawn by local office Western Union Telegraph Company on Corn Exchange National Bank, Chicago, Illinois, order ours and yours indorsed by us. Transfer account Ft. Dodge Farm Loan and Trust Company."

This merely described the draft mailed, and that it had been mailed. It could only be delivered in the regular course of mail, which did not reach Audubon until the following day, the day following that on which the note and

mortgage might have been paid. Neither the money nor this draft, then, reached the payee of the note and the mortgage on the day on which the plaintiff might have insisted on payment. Doubtless, the defendant might have carried the draft or its equivalent in money by automobile, and turned it over to the payee and mortgagee in time to have avoided a breach of its undertaking. But it did not attempt so to do, and relied on performing its alleged agreement by having the draft carried by mail. True, the president of the Audubon bank testified, in answer to the question:

"On either of these days (March 1st or 2d) did you receive any money purported to come through the Western Union Telegraph Co. from Ellen McMahon? A. Yes, sir. Q. On what day? A. On the afternoon of March 1st, we received a wire from Atlantic, from the Atlantic National Bank, wiring us the amount. * * * Q. When did you receive any check, draft or money? A. When the check came on the afternoon of the second day of March, 1917."

The majority hold that this constituted payment, for that the witness interposed no objection to what was done as payment. It will be observed, however, that the telegram did not purport to be payment of the mortgage and note. Nor was the witness, in testifying in the suit, required to assert any objections to the telegram, even though it had been intended as payment if not so disclosed. What he said in answer to interrogatories throws no light on what he did upon receipt of the communication. The first answer merely indicates that he received money on the 1st or 2d day of March; and the second answer, that he received the telegram on the first day, describing it as "wiring us the amount." This was descriptive of the telegram, as clearly appears from the reading of the telegram. In a sense, advising of the mailing of the draft was wiring the

amount; and it is going far afield to say that the testimony of the president of the bank so describing the telegram proved that, months previous, he had accepted the telegram as equivalent to money, in payment of the note and mortgage. As pointed out, there was no evidence what the bank or any officer said or did upon the receipt of the telegram saying, in substance, that a draft had been mailed to it. Nor was the bank required to respond in any manner to the telegram or object to the manner of payment until the draft reached the bank. Of course, it is well settled that, upon the tender of a draft, check, or other thing as payment in lieu of money, the person to whom the same is tendered must interpose objection thereto, or he will be presumed to have accepted the same. But this telegram did not purport to be an equivalent of money. It would not have transferred money or its equivalent, had it been delivered, endorsed, or negotiated to anyone. It did not purport to carry any money, check, draft, or other thing of value to the sendee. It merely informed the sendee that a draft had been mailed to it, and described the draft. As we understand it, the majority hold that describing this by the president of the bank as "wiring us the amount" should be construed as payment of the note and mortgage when received on the first day of March, though the draft did not reach the bank until a day later. The subsequent answer of the witness explains what he did receive, namely, a draft for the money; and it seems to me that this holding that this amounted to full compliance with the alleged agreement is strained and unwarranted, and is a distortion of the evidence adduced, and that the evidence clearly shows that the defendant did not comply with its alleged contract to deliver the amount proposed to the bank of Audubon on the first day of March. Custom was neither pleaded nor proven, and the decision rests solely on the

evidence quoted. The majority seem to hold that, even though the telegram did not transfer money or equivalent upon its delivery, the bank so treated it. In what way? What did it do with the telegram? In what way did it manifest an intention to accept the telegram as payment, when the telegram did not purport to transfer any money or anything else? The bank did not endorse it, nor did it attemped to transfer it, or to apply it or its proceeds in satisfaction of the plaintiff's obligation. Whether it objected or not does not appear, and I know no reason for raising any objection to a telegram of this kind until the draft reached the bank. It was then rejected as having reached the bank too late. As to whether the bank treated the telegram as "wiring us the amount" at the time it was received, this record is silent; though the majority base their conclusion to the contrary upon conclusion derived from the description of the telegram by the witness, many months subsequent to the receipt of the telegram. It not appearing that the bank received or accepted the communication as money, or in lieu of the cash or draft which the telegram advised would be mailed, I think that it should be held that the defendant failed to perform its alleged contract; and that, if the contract be regarded as valid, the plaintiff is entitled to recover for breach thereof, if any there was, all damages consequent thereon.

I am persuaded that the majority are in error in holding that the defendant had performed its contract. As to whether the alleged arrangement with the company was valid, I express no opinion.

Preston, J., concurs in this dissent.